## Carlitz, Appellant, *v.* Briggs.

*Landlord and tenant—Principal and agent—Trespass against agent.*

A tenant has no standing to maintain an action of trespass against the agent of his landlord on the ground that the latter directed another person to break into and enter upon the demised premises, and because such person had prevented the plaintiff from removing his goods, when the evidence shows that the agent had merely given to such other person by the direction of the owner a lease on the premises; that the term of such lease did not go into effect until after the acts of which the plaintiff complained; that the agent had given no directions to the new tenant; and that at the time of the acts complained of the old tenant was in default for rent, and the landlord had a right to determine the lease.

Argued Oct. 10, 1911. Appeal, No. 293, Oct. T., 1910, by plaintiff, from order of C. P. No. 5, Phila. Co., March Term, 1907, No. 4,550, refusing to take off nonsuit in case of Joseph H. Carlitz v. Robert Briggs. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass for an alleged wrongful eviction. Before STAAKE, J.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was refusal to take off nonsuit.

*Walter Biddle Saul,* for appellant.—Even had a right of forfeiture existed it was never exercised and it cannot now be argued, after the trespass is accomplished, that the very act which constituted the trespass was an exercise of the right of forfeiture: Kreutz v. McKnight, 53 Pa. 319.

It is the law that every person who participates in or aids, abets, or encourages a trespass is liable as a principal: McCloskey v. Powell, 138 Pa. 383; Green v. Kennedy, 46 Barb. 16.

The law is now well settled that where a legal right has been invaded the plaintiff may recover nominal damages, although there may be no evidence of actual damage sustained: Cronin v. Sharp, 16 Pa. Superior Ct. 76; Schnable v. Koehler, 28 Pa. 181; Devlin v. Snellenburg, 132 Pa. 186; Morris & Essex Mutual Coal Co. v. Railway Co., 190 Pa. 448.

*Frank B. Stockley,* for appellee, cited: McKinney v. Reader, 7 Watts, 123; McMillin v. Titus, 222 Pa. 500.

OPINION BY HEAD, J., April 23, 1912:

On September 1, 1905, the plaintiff became the tenant of certain premises in the city of Philadelphia under a written lease executed by him and by the defendant as agent of the owner. The term was one year from the date mentioned. The rent reserved was $336, which the plaintiff agreed to pay in monthly installments of $28.00, payable on the first days of each and every month in advance at a place designated in the lease for such payment. In that instrument the lessee covenanted, inter alia, that he would "not underlet the said premises or any part thereof, or use or occupy the same other than as a store and dwelling." It was further provided "that if the rent shall remain unpaid on any day on which the same ought to be paid, then the lessor may enter the premises and proceed by distress, etc.," for the purpose of collecting the

rent thus unpaid, and finally "that if the said rent shall at any time be in arrear and unpaid, or if the said lessee shall relet or otherwise use the said premises than as above expressed . . . . , then this lease shall at the option of the said lessor cease and absolutely determine, etc."

The plaintiff alleged that on or about December 2, 1906, he being then the tenant rightfully in possession of the said premises under the said lease, the defendant ordered and directed one Charles Solo to break into and enter upon the said premises; that the last-named person did break into and enter upon the said premises and dispossessed the plaintiff and thereafter refused to permit the plaintiff to re-enter or to remove certain personal property on the premises of the value of about $500. The plaintiff then brought this action of trespass to recover damages for the alleged unlawful eviction and the loss of his property following thereon. At the conclusion of the plaintiff's testimony the learned judge below, being of the opinion that no cause of action against the defendant had been shown, entered a compulsory nonsuit which the court in banc afterwards refused to take off. The present appeal by the plaintiff followed.

The lease contained the usual provision that unless three months' notice was given by either party, prior to the expiration of the term named, of an intention to sever the relation of landlord and tenant at the end of the term, that relation should continue for a second like term with all of the conditions and covenants of the original lease in force and effect. No such notice was given. Consequently, on September 1, 1906, a second term began. It appears to be undisputed that the tenant had regularly paid each month's rent as it fell due from the inception of the lease down to and including the payment on November 1, 1906, for that month. It also appears that the premises had been occupied by the defendant and some of his relatives as a dwelling house and store. Whilst the store was owned by the plaintiff, it was not conducted by him, his employment as a chemist requiring his presence elsewhere.

He testifies that the store was opened for the benefit of his sister, for whose support it was intended. She died in September, 1906. He says that in November following her death the house was vacated as a residence by all of those who had occupied it and that he began moving the store gradually as he could. The store had been closed for some weeks prior to the events complained of in this action and a considerable portion of the stock removed. The plaintiff says he went to the premises "on Friday night the last day in November to make certain arrangements for having the goods transferred on Saturday," which would be December 1, of that year. He did not return on Saturday nor did he pay or tender the rent which became due on that day. He did return on Sunday, December 2, and found a man named Solo in the house who claimed to have rented it from the defendant. The plaintiff removed such of his personal property as he then desired to take without objection from any source and stated he would return "with a team" on the following morning, Monday the third, for what remained. He never presented himself at the premises thereafter nor did any teamster or other like person exhibiting any authority from him. On Monday morning a maid servant in the employ of the plaintiff's sister, having with her a colored boy, came to the premises and stated they had been sent for the goods of the plaintiff. They were entire strangers to the man in possession and presented no order or other evidence save their own declaration to show any connection with the plaintiff or his goods. On this same Monday the plaintiff went to the office of the defendant and, not finding him, made a tender of the month's rent due December 1, to a young woman whom he found there working on the books. She declined to receive it. Later, on the same day, he learned from the defendant that the property had been rented to another man, and then brought this action.

It cannot be denied that taking the testimony as a whole it presented strong evidence that the plaintiff had

abandoned the demised premises for the purposes for which he alone could lawfully use them. But abandonment is a question of intention, and in the face of the tenant's testimony that on Friday evening, November 30, he wrote and mailed a postal card to the defendant advising the latter that he would pay the rent for the coming month, December, on the following Monday, and left valuable personal property in the house, we do not think the learned trial judge could rightfully withdraw this question from the consideration of the jury and declare, as a matter of law, that the plaintiff had abandoned the premises and thus voluntarily surrendered his lease.

There is not a scintilla of evidence that the defendant had any connection whatever with the occurrences mentioned except the solitary fact that, by direction of the owner, he had signed for the latter a new lease with one Solo, the term of which, however, was not to begin until Tuesday, December 4. In no sense did that lease give to the lessee therein named any warrant or even color of authority to take possession of the demised premises before the date mentioned as the beginning of his term. For any acts he may have done before that date, in no aspect of the evidence now presented by this record, could the defendant be in any way liable. Had the second tenant not appeared at the premises until Tuesday, December 4, it is fair to presume, in the light of the plaintiff's own statement, to wit, "I was there on Friday night, the last day in November, making certain arrangements with regard to having the goods transferred on Saturday," the house would have been found vacant with the former tenant and all of his possessions removed.

But without regard to this aspect of the case there is another reason which seems to us to point clearly to the conclusion that the plaintiff could not successfully maintain the present action. He relies, as he must, upon his original lease and its renewal as the guaranty that on December 4, when the new lease which the defendant executed went into effect, he was in lawful possession

of the demised premises under the terms of the earlier lease and could not rightfully be dispossessed. But the very covenants of the lease on which he relies work his undoing in this respect. His own testimony shows that he neither paid nor tendered any rent on December 1. The landlord was not bound thereafter to receive it but could, if he chose, rely on the stipulation in the lease that if the rent should be at any time unpaid or in arrear, the lease should "at the option of the said lessor cease and absolutely determine." We need not therefore consider how far, if at all, the plaintiff's own testimony tended to establish a breach of his further covenant that "he would not use or occupy the same (the demised premises) other than as a store and dwelling."

Under the situation thus presented we cannot say that the learned court below committed any reversible error in holding that the plaintiff had failed to show any cause of action against the defendant and in refusing to take off the compulsory nonsuit.

Judgment affirmed.